UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JUNE RODGERS, individually and as Administrator of the Estate of Christian Phillip Nolan Rodgers, | : : | Hon. Joseph H. Rodriguez Civil Action No. 17-5556 |
| Plaintiff, | : | |
| v. | : | OPINION |
| LAURA AND JOHN ARNOLD FOUNDATION and ANNE MILGRAM, | : | |
| Defendants. | : | |

This matter is before the Court on a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) filed by the remaining Defendants. Oral argument on the motion was heard on September 27, 2018 and the record of that proceeding is incorporated here. For the reasons placed on the record that day, and those articulated below, the motion will be granted.

Background

The case focuses on whether New Jersey's Criminal Justice Reform Act ("CJRA"), legislation that became effective on January 1, 2017, violates the New Jersey Products Liability Act. Prior to this reform, New Jersey's Constitution afforded criminal defendants awaiting trial the right to bail except in capital cases. The reform was contingent upon voter approval of an amendment to the New Jersey Constitution replacing the guarantee of

1

bail with a provision allowing judges to order pretrial detention under limited circumstances and authorizing the Legislature to set procedures for pretrial release and detention decisions.

The CJRA moved pretrial release decisions away from a resource-based model heavily reliant on monetary bail to a risk-based model. Consistent with the constitutional amendment, the statute expressly requires courts, when making pretrial release decisions, to impose pretrial conditions that will reasonably assure: (1) the defendant's appearance in court when required, (2) the protection of the safety of any person or community, and (3) that the defendant will not obstruct or attempt to obstruct the criminal justice process. The CJRA provides a hierarchy of pretrial release conditions and requires courts to utilize the least restrictive options necessary to achieve the three goals noted above. The major difference between the new system and the old system is that judges must first consider the use of non-monetary pretrial release conditions, which has resulted in a significant reduction in the use of monetary bail.

In order to assess risk, the CJRA utilizes a Public Safety Assessment ("PSA"). In particular, the State adopted a PSA developed by Defendant the Laura and John Arnold Foundation ("Foundation"). The PSA is a data-based method that helps courts assess the risk that the criminal defendant

will fail to appear for future court appearances or commit additional crimes and/or violent crimes if released pending trial. After scores are assessed, a decision-making framework proposes pretrial conditions to manage the risk. Although the trial judge must consider the PSA scores and pretrial conditions recommendations, the court makes the ultimate decision on conditions of release or detention after considering a variety of factors besides the PSA.

The Complaint alleges that in the first six months of 2017, New Jersey courts granted 3,307 motions for pretrial detention and approximately 18,000 individuals were released on non-monetary conditions. This matter focuses on the release of one of those criminal defendants in April 2017. Plaintiff claims that on April 5, 2017, Jules Black was arrested by the New Jersey State Police and charged for being a felon in possession of a firearm. Plaintiff alleges that Black was released on non-monetary conditions the following day because he had a low PSA score. Three days later, Black allegedly murdered Christian Rodgers. At the time of his death, Rodgers was 26 years old and is survived by his mother, Plaintiff June Rodgers, who brings this lawsuit both individually and on behalf of her son.

The Complaint also named as a Defendant Anne Milgram, the Foundation's former Vice President of Criminal Justice.

## Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss "for failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. Fowler v. UFMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) ("Iqbal ... provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). The Court "must accept all of the complaint's well-pleaded facts as true," Fowler, 578 F.3d at 210, "and then determine whether they plausibly give rise to an entitlement for relief." Connelly, 809 F.3d at 787 (citations omitted).

Restatements of the elements of a claim, however, are legal conclusions and, therefore, not entitled to a presumption of truth. <u>Burtch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 224 (3d Cir. 2011).

## Discussion

The New Jersey Products Liability Act (PLA) requires plaintiffs suing under the PLA to prove "by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it[:]

> a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or
>
> b. failed to contain adequate warnings or instructions, or
>
> c. was designed in a defective manner."

N.J. Stat. Ann. § 2A:58C-2. The Restatement (Third) of Torts includes in the definition of product non-tangible items such as "other items":

> For purposes of this Restatement: (a) A product is tangible personal property distributed commercially for use or consumption. Other items, such as real property and electricity, are products when the context of their distribution and use is sufficiently analogous to the distribution and use of tangible personal property that it is appropriate to apply the rules stated in this Restatement. (b) Services, even when provided commercially, are not products. (c) Human blood and human tissue, even when provided commercially, are not subject to the rules of this Restatement.

Restatement (Third) of Torts § 19.

The Court finds that the PSA is not a product as defined by the PLA. It is neither a tangible product or a non-tangible "other item" as contemplated by section 19 of the Restatement of Torts and it is not distributed commercially. The Court has considered Plaintiff's argument that the PSA, as a matter of policy, should be considered a product analogous to approaches of the First and Fifth United States Court of Appeals, which are "moving toward liability of technological systems." (Pl. Br., p. 9.) Plaintiff's arguments are misplaced, however. Plaintiff cites <u>Lone Star Nat. Bank, N.A. v. Heartland Payment Systems, Inc.</u>, 729 F.3d 421 (5th Cir. 2013) (whether economic loss doctrine barred negligence claims against a bank that had its security software breached by computer hackers), and <u>Patco Constr. Co. v. People's United Bank</u>, 684 F.3d 197 (1st Cir. 2012) (whether a bank's security procedure was commercially reasonable under the UCC), neither of which are products liability cases.

Rather, the PSA constitutes information, guidance, ideas, and recommendations as to how to consider the risk a given criminal defendant presents. The PSA essentially is a nine-factor rubric that uses "information gathered from [an eligible defendant's] electronic court records" to "measure the risk [he or she] will fail to appear in court and the risk he or

she will engage in new criminal activity while on release," in an effort to provide New Jersey judges with objective and relevant information that they can use as one factor—among several—in making decisions about pretrial-release conditions. Holland v. Rosen, 895 F.3d 272, 281 (3d Cir. 2018); see also Holland v. Rosen, 277 F. Supp. 3d 707, 718-720 (D.N.J. 2017) (describing the PSA and how it works in conjunction with a jurisdiction's Decision Making Framework to generate information and recommendations for judges and other stakeholders). As such, the PSA does not "thwart" the role of judges and prosecutors, as Plaintiff contends. (Pl. Br., p. 2.) Under the First Amendment, information and guidance such as that reflected in the PSA are not subject to tort liability because they are properly treated as speech, rather than product. See Restatement (Third) of Torts § 19 cmt. d (noting that courts "express[] concern that imposing strict liability for the dissemination of . . . information would significantly impinge on free speech"). Accordingly, Plaintiff's claims of products liability fail at the outset.

While the Court need go no further, Plaintiff also has failed to plausibly allege proximate causation required for products liability claims. Importantly, the discretionary decision of a judge on whether or not to detain an accused individual, in every case, creates an obstacle for finding

proximate cause. By New Jersey statute, the judge is required to consider many different pieces of information in addition to the PSA score; the judge then has complete discretion to reject the recommendation to which the PSA contributes. See N.J. Stat. Ann. §§ 2A:162-16(b)(2), 2A:162-17(a); see also Holland, 895 F.3d at 282 (PSA scores—along with any pretrial services or prosecutorial recommendations based wholly or partly on PSA scores—are factors that a judge must consider alongside "all the circumstances" that the judge otherwise deems relevant). That is, the PSA does not supplant judicial decision making but merely informs a judge's decision of whether to release or detain a defendant pending trial. State v. Robinson, 160 A.3d 1, 11 (N.J. 2017) (citing N.J. Stat. Ann. § 2A:162-20). This obviates Plaintiff's argument that the PSA was defective in that it omitted risk indicators of firearm possession and sex-crimes.

Plaintiff does not dispute that all of her other claims are either derivative of or subsumed by the products liability claims against the Foundation. See N.J. Stat. Ann. § 2A:58C-1(b)(3) (The PLA is the exclusive statutory remedy for "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim.).

Additionally, Milgram is not implicated factually in the allegations of the Complaint whatsoever. As there has been no plausible basis alleged to

support a claim of individual liability against her, the Complaint against Milgram will be dismissed.

## Conclusion

For these reasons as well as those placed on the record during oral argument, Defendants' motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) will be granted. An appropriate Order will issue this date.

Dated: June 11, 2019           _s/ Joseph H. Rodriguez_____
                                           JOSEPH H. RODRIGUEZ
                                           U.S.D.J.